IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN DOE,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>REALPAGE, INC. a/k/a LEASING DESK SCREENING and BACKGROUNDCHECKS.COM LLC,<br><br>　　　　　Defendants. | Case No.: 1:24-cv-04716<br><br>**COMPLAINT AND JURY TRIAL DEMAND** |

## COMPLAINT

Plaintiff John Doe ("Plaintiff") by and through his counsel brings the following Complaint against RealPage, Inc. a/k/a Leasing Desk Screening ("RealPage"), and BackgroundChecks.Com LLC ("BackgroundChecks.com") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of a tenant screening report wherein BackgroundChecks.com published to RealPage which in turn published Plaintiff's dismissed and expunged criminal records to Plaintiff's prospective landlord.

## INTRODUCTION

1. This is an individual action for damages, costs, and attorney's fees brought against Defendants pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2. Defendants are consumer reporting agencies that compile and maintain files on consumers on a nationwide basis. They sell consumer reports, also known as tenant screening reports, generated from their databases and furnishes these consumer reports to mortgage brokers,

landlords, and property management companies who use the reports to make decisions regarding prospective borrowers and tenants.

3. Defendants assembled and improperly published adverse and inaccurate criminal record information that should have been excluded from the tenant screening purposed consumer report.

4. Specifically, Defendants improperly reported two criminal records from the Illinois State Court, Cook County (Case No. 23300018201) that were dismissed and expunged on December 14, 2023 (the "Expunged Charges").

5. Plaintiff's prospective landlord ordered a tenant screening purposed consumer report about Plaintiff from Defendant RealPage, who in turn ordered the report from Defendant BackgroundCheck.com. Plaintiff's prospective landlord denied Plaintiff's housing application after receiving Defendant RealPage's report about Plaintiff, which RealPage obtained from Backgroundcheck.com, wherein Defendants published the Expunged Charges that otherwise should have been excluded from the consumer report.

6. Defendants do not employ reasonable procedures to assure the maximum possible accuracy of the information they report regarding consumers. Defendants' failures to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate and damaging.

7. Specifically, Defendants do not employ reasonable procedures to exclude dismissed and expunged records from consumer reports.

8. Defendants committed these violations pursuant to their standard policies and practices, which harm innocent consumers seeking housing by prejudicing their prospective landlords with inaccurate criminal record information.

9. Defendants' inaccurate reports cost Plaintiff the ability to rent the apartment unit that was suitably accommodating of his needs, causing him physical injury as a result of emotional distress, embarrassment, inconvenience, anxiety, fear of homelessness, and financial loss.

10. As a result of the Defendants' violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the consumer report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

11. As a result of the Defendants' conduct, action, and inaction, Plaintiff brings claims against Defendants for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

**PARTIES**

12. Plaintiff John Doe is a natural person residing in Palatine, Illinois, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

13. Defendant RealPage is a corporation doing business throughout the United States, including the State of Illinois and in this District, and has its headquarters at 2201 Lakeside Blvd, Richardson, Texas 75082.

14. Among other things, Defendant RealPage sells consumer reports, often called tenant screening reports, to mortgage brokers, property management companies, and landlords for their use in deciding whether to rent or otherwise offer housing to a prospective tenant. These reports are provided in connection with a business transaction initiated by the consumer.

15. Defendant RealPage is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or

assembling information on consumers for the purpose of furnishing consumer reports for tenant screening purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

16. Defendant BackgroundChecks.com is a corporation doing business throughout the United States, including the State of Illinois and has a principal place of business located at 100 Centerview Drive, Suite 300, Nashville, TN 37214.

17. Among other things, Defendant BackgroundChecks.com sells consumer reports, often called tenant screening reports, to mortgage brokers, property management companies, and landlords for their use in deciding whether to rent or otherwise offer housing to a prospective tenant. These reports are provided in connection with a business transaction initiated by the consumer.

18. Defendant BackgroundChecks.com is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling information on consumers for the purpose of furnishing consumer reports for tenant screening purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

**JURISDICTION AND VENUE**

19. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

20. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

21. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

22. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

23. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

24. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

## THE FCRA'S PROTECTIONS FOR HOUSING APPLICANTS

25. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates tenant screening background check reports like the one the Defendants prepared in Plaintiff's name.

26. The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

27. In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendants, are "consumer reporting agencies." 15 U.S.C. §§ 1681a(d) and (f).

28. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

29. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

30. Defendants disregarded their duties under the FCRA with respect to Plaintiff's background check report.

## DEFENDANTS' ILLEGAL BUSINESS PRACTICES

31. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

32. As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. CFPB Report at 4.

33. The background check industry takes in revenues in excess of four billion dollars, annually.[2]

34. Background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").

[2] IBISWorld, Inc., *Background Check Services in the US – Market Size, Industry Analysis, Trends & Forecasts*, available at https://www.ibisworld.com/united-states/market-research-reports/background-check-services-industry/#IndustryStatisticsAndTrends (last visited June 6, 2024).

little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating background checks.

35. Background check companies, like Defendants herein, collect millions of criminal and civil records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

36. Given that Defendants are in the business of selling background checks, Defendants should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

37. Defendants place their business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendants to produce reports containing information that is inaccurate and incomplete than it is for Defendants to exert proper quality control over the reports prior to their being provided to Defendants' customers.

38. Defendants report erroneous and incomplete information because they want to maximize the automation of their report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

39. Defendants charge their customers the same price for reports that are grossly inaccurate as it does for accurate reports.

40. Appropriate quality control review of Plaintiff's report would have made clear that Defendants were unlawfully reporting the Expunged Charges.

41. As a provider of background check reports, Defendants should be aware of the FCRA requirements. Yet, neither Defendant is a member of the Professional Background Screening Association ("PBSA"), a non-profit founded in 2003 to establish and promote the

highest level of ethics and performance standards in the screening industry. PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

### Plaintiff Applies for an Apartment with Eastbank

42. In April 2024, Plaintiff was in the process of relocating from Chicago, IL to Fort Worth, TX for a new job that was scheduled to start in May 2024.

43. Plaintiff sought out suitable apartments located in close proximity to his friends, acquaintances, and future employer.

44. On April 28, 2024, Plaintiff toured a suitable unit at the Eastbank at Waterside complex in Fort Worth, TX (the "Eastbank Apartment").

45. Plaintiff determined that the Eastbank Apartment was a good fit, and that the monthly rent ($1,676.00) was reasonable.

46. Later that day, Plaintiff submitted a rental application for the Eastbank Apartment, paid Eastbank $350, consisting of a $150 non-refundable application fee and a $200 security deposit.

### Defendant Published an Inaccurate Consumer Report to Eastbank

47. Eastbank contracted with RealPage to conduct tenant screening on prospective tenants to determine whether the prospective tenant is eligible to rent an apartment.

48. On April 28, 2024, Eastbank ordered a consumer report on Plaintiff from RealPage.

49. RealPage, in turn, ordered a consumer report on Plaintiff from BackgroundChecks.com.

50. After receiving the consumer report from BackgroundCheck.com, RealPage sold it to Eastbank, wherein Defendant RealPage published information including a compilation of Plaintiff's credit history, criminal history, and civil records history.

51. The consumer report is a consumer report regulated by the FCRA.

52. Within that consumer report, Defendants published inaccurate information about Plaintiff.

53. Specifically, Defendants' consumer report about Plaintiff included the Expunged Charges, namely, a stigmatizing felony drug possession charge, and a misdemeanor theft charge, as shown in the excerpt below:

**Offense information** - ID column indicates association between offender and offense

| ID | Jur code | Disposition | Type/Level | Charge | Record Date | ORIC/ County | Note |
|---|---|---|---|---|---|---|---|
| 1 | ILCTYCOOK | | F | PCS - POSSESSION - POSS AMT CO | 04/01/2023 | Case#23300018201 | |
| 1 | ILCTYCOOK | | M | THEFT CONTROL INTENT<$500 | 04/01/2023 | Case#23300018201 | |

**Source and Vendor Information**

| Jur Code | Source | Vendor Information |
|---|---|---|
| ILCTYCOOK | Cook County | Backgroundchecks.com |

54. The Expunged Charges reported by the Defendants about Plaintiff are misleading, inaccurate, and were unlawfully reported on Plaintiff's background report.

55. A cursory review of the widely available underlying public court records confirms that both charges were dismissed against Plaintiff, and were expunged on December 14, 2023.

56. The sole reason the Expunged Charges were reported about Plaintiff was that the Defendants failed to follow reasonable procedures to assure the maximum possible accuracy of the information they published within the consumer report they sold about Plaintiff.

57. Had Defendants followed reasonable procedures, they would have discovered that the charges were dismissed against Plaintiff and expunged on December 14, 2023.

58. In preparing and selling a consumer report about Plaintiff, wherein BackgroundCheck.com published to RealPage, who in turn published to Plaintiff's prospective landlord inaccurate information about Plaintiff, Defendants failed to follow reasonable procedures

to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**Eastbank Denies Plaintiff's Housing Application**

59. By email dated April 28, 2024, Plaintiff was notified that his application for the Eastbank Apartment was denied as a direct result of "[c]riminal and other public records" reported by Defendants.

60. Out of confusion and concern, Plaintiff contacted an Eastbank representative seeking clarification on which criminal or public records resulted in the denial. Plaintiff further explained that any criminal charges against him had been dismissed and expunged and thus should not have been included in any consumer report about Plaintiff.

61. The Eastbank representative simply stated that Eastbank could not approve his application due to criminal record information and advised Plaintiff to contact RealPage directly for more information.

62. On April 28, 2024, Plaintiff contacted Defendant RealPage to obtain a copy of his tenant screening purposed background check report.

63. Shortly thereafter on April 30, 2024, Plaintiff received a copy of the consumer report and was shocked and humiliated to see that Defendants were reporting the Expunged Charges.

64. Upon identifying the egregious and damaging inaccuracies propagated by the Defendants, which directly led to the rejection of his housing application, Plaintiff promptly contacted Eastbank management.

65. Again, Plaintiff explained that the Expunged Charges should not have been included on his background report, provided court records showing that the charges were in fact expunged, and asked Eastbank to reconsider his application.

66. Despite his best efforts, the determination to deny Plaintiff's application stood.

67. By email dated May 3, 2023, Eastbank advised Plaintiff that his application was denied due to the Expunged Charges reported by Defendant.

68. Plaintiff was very panicked, confused, and concerned about the impact of the Defendants' inaccurate reporting, both in relation to the Eastbank apartment, but also the impact of the same on his future.

69. Specifically, BackgroundCheck.com sold and published a grossly inaccurate tenant screening purposed consumer report to RealPage who then sold and published same to Plaintiff's prospective landlord. These reports included the Expunged Charges, even though public court record information was widely available to the Defendants prior to publishing Plaintiff's consumer report, but Defendants failed to perform even a cursory review of such information.

70. Plaintiff reasonably believes that due to the Defendants' inaccurate and misleading reporting Eastbank formed a negative opinion about Plaintiff and/or moved on to other candidates.

71. Defendants' false report cost Plaintiff a housing opportunity that met his needs, including those attendant to affordability, safety, and proximity to work and friends.

72. Plaintiff was looking forward to living at Eastbank because it was in a safe neighborhood, was near the major highways, his work and friends, and was within his budget.

**Plaintiff Is Forced to Lease a More Expensive Apartment**

73. After his application for the Eastbank Apartment was denied on April 28, 2024, Plaintiff was desperate to find suitable living arrangements.

74. On or about April 29, 2024, Plaintiff submitted an application for an apartment unit at The Kelton at Clearfork apartment complex (the "Kelton Apartment").

75. The Kelton Apartment was suitable, centrally located, and available, but was considerably more expensive.

76. Together with the mandatory administrative charges and fees, Plaintiff's monthly charges at the Kelton Apartment was $2,088.25.

77. By contrast, the monthly rent at the Eastbank Apartment was $1,676.

78. Plaintiff also had to pay $225 of administrative and application fees at the time of his application.

79. Fortunately, Plaintiff's application for the Kelton Apartment was approved and he formally moved in to the Kelton Apartment in early May 2024.

80. The injuries suffered by Plaintiff as a direct result of the Defendants' erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendants' conduct would have given rise to causes of action based on defamation, false misrepresentation, and invasion of privacy.

81. As a result of the Defendants' violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the consumer report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

**CLAIMS FOR RELIEF**
**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy**

82. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

83. Defendants are each a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

84. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

85. At all times pertinent hereto, the above-mentioned tenant screening report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

86. Defendants violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the consumer report it sold about Plaintiff as well as the information it published within the same.

87. As a result of the Defendants' violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of housing opportunities; loss of time and money trying to correct the consumer report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

88. Defendants willfully violated 15 U.S.C. § 1681e(b) in that their conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

89. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendants negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

## DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

Respectfully submitted this 6th day of June, 2024.

*/s/ Moshe Boroosan*
Moshe Boroosan, Bar #5429915NY
**CONSUMER ATTORNEYS**
1318 Avenue J, 2nd Floor,
Brooklyn, NY 11230
T: (718) 887-2926
F: (718) 715-1750
E: mboroosan@consumerattorneys.com

David A. Chami, 027585AZ
**CONSUMER ATTORNEYS**
8245 N. 85th Way
Scottsdale, AZ 85258
T: (480) 626-2359
F: (718) 715-1750
E: dchami@consumerattorneys.com

*Attorneys for Plaintiff John Doe*